## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

KEITH BAKER                                    *
                                               *
        v.                                     *          Civil Case No. JFM-15-3542
                                               *
COMMISSIONER, SOCIAL SECURITY                  *
                                               *
                                    *************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered both parties' dispositive motions. [ECF Nos. 11, 12]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). For the reasons set forth below, I recommend that both motions be denied, that the Commissioner's decision be reversed in part pursuant to sentence four, and that the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Keith Baker applied for Supplemental Security Income on August 22, 2013, alleging a disability onset date of July 1, 2010. (Tr. 284-89). His claim was denied initially and on reconsideration. (Tr. 94-97, 104-05). An Administrative Law Judge ("ALJ") held a hearing on March 24, 2015, (Tr. 38-75), and subsequently denied benefits to Mr. Baker in a written opinion dated April 24, 2015. (Tr. 19-37). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the Agency.

The ALJ found that Mr. Baker suffered from the severe impairments of major depressive

disorder, bipolar disorder, substance abuse, and left forearm fracture.  (Tr. 24).  Despite these

impairments, the ALJ determined that Mr. Baker retained the residual functional capacity

("RFC") to:

> perform medium work as defined in 20 CFR 416.967(c) except he is limited to
> unskilled work; not more than occasional contact with the public and coworkers;
> and not more than occasional proximity to coworkers.

(Tr. 26).  After considering testimony from a vocational expert ("VE"), the ALJ determined that

Mr. Baker was capable of performing his past relevant work as a warehouse worker/stocker.  (Tr.

30).  Accordingly, the ALJ determined that Mr. Baker was not disabled.  *Id.*

Mr. Baker disagrees.  He raises several primary arguments in support of his appeal:  (1)

that the ALJ erroneously evaluated Listings 12.05B and C; (2) that the ALJ erred in the

assignment of weight to the opinions of medical sources; (3) that the ALJ's analysis was

deficient under *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); and (4) that the ALJ erred in

assessing Mr. Baker's credibility.  Pl. Mot. at 8-20.  I concur that the ALJ's opinion is deficient

under *Mascio*, and thus recommend remand to allow compliance with that decision and also to

permit appropriate analysis of the potentially relevant Listings.  In recommending remand for

additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Mr.

Baker is not entitled to benefits is correct or incorrect.

Beginning with the *Mascio* issue, in that case, the United States Court of Appeals for the

Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as

pertinent to this case, the inadequacy of the ALJ's evaluation of  "moderate difficulties" in

concentration, persistence, or pace.  *Id.* at 638.  At step three of the sequential evaluation, the

ALJ determines whether a claimant's impairments meet or medically equal any of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Listings 12.00 *et. seq.*, pertain

to mental impairments.   20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.   Each listing therein consists of:   (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations.   *Id.* § 12.00(A).   If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment.   *Id.*

Paragraph B consists of four broad functional areas:   (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."   20 C.F.R. § 416.920a(c)(2).   The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas:   none, mild, moderate, marked, or extreme.   *Id.* § 416.920(a)(c)(4).   In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation.   *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02.   Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function."   *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."   *Id.* § 12.00(C)(3).   Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific

number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The Fourth Circuit remanded Mascio because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace.[1] *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.*

In this case, the entirety of the ALJ's analysis as to concentration, persistence or pace at Step Three stated, "With regard to concentration, persistence or pace, the claimant has moderate difficulties. On October 23, 2013, consultative examiner Alan M. Langlieb, M.D., noted that the claimant scored 21 out of 25 on his mini mental status examination (MMSE) but was able to

---

[1] The hypothetical the ALJ posed to the VE in *Mascio* did not actually limit the claimant to unskilled work, and thus did not match the ALJ's RFC assessment. However, the VE indicated that all of the jobs cited in response to the hypothetical involved "unskilled work" such that, in effect, the hypothetical matched the ALJ's RFC assessment.

follow simple instructions independently." (Tr. 25). In the RFC assessment, the ALJ noted, "[t]here was no evidence of significant abnormalities on mental status examination except for some difficulties in concentration. The claimant scored 1 out of three on concentration and memory testing." (Tr. 28). However, the ALJ imposed no specific concentration-related limitations in the RFC assessment, and did not explain the conclusion that Mr. Baker could sustain work. The only limitation, to "unskilled" work, was expressly deemed inadequate in *Mascio*, and the ALJ provided no analysis to allow effective appellate review. In light of this inadequacy, I recommend that the case be remanded to the Commissioner for further analysis consistent with the Fourth Circuit's mandate in *Mascio*.

The ALJ's analysis of Listing 12.05 is also deficient under the facts presented in this case. The only full scale IQ score in the record is the November 12, 2014 score determined by consultative examiner Daniel Arnheim, Ph.D. Dr. Arnheim noted that Mr. Baker had a full scale IQ of 53, but further noted that the score:

> falls within the extremely low range, with the score seeming to have been negatively influenced by his slowed performance on paper-and-pencil tasks, and his careless responses to perceptual tasks, which may be related to his reported depression and attitude problems, such that his obtained scores may be underestimates of his abilities. Even so, he does appear to have some intellectual/academic limitations, based on his history of having failed two grades while enrolled in special education classes, and his not having graduated until he was twenty years old. Other of his scaled scores indicated severe deficits in acquired fund of general information, spatial relations skills, and vocabulary, with his being unable to read beyond the most basic words on the vocabulary subtest list. . . Analysis of his obtained WAIS-IV index scores, all of which fell within the extremely low range, revealed a significant difference at the .05 level between his higher working memory and his lower processing speed.

(Tr. 507). Dr. Arnheim went on to opine that Mr. Baker, if he were to receive benefits, would require someone to manage the funds for him. (Tr. 508). The ALJ assigned "little weight" to the IQ score of 53, concluding that the score was invalid. However, Dr. Arnheim did not make that

assessment, and simply suggested that the score "may" underestimate Mr. Baker's abilities.[2] Regardless, any full scale IQ up to 70 would potentially make Mr. Baker eligible under the Listings.  In light of the totality of Dr. Arnheim's opinion, and the wide gap between Mr. Baker's score and the top score that would trigger a listing, I recommend remand for further analysis as to whether Mr. Baker meets or equals Listings 12.05B or 12.05C.

Complete analysis as to the *Mascio* and Listing issues described above might affect the ALJ's opinion as to the other contentions raised by Mr. Baker, specifically the assessment of his credibility and the assignment of weight to the opinions of various physicians, including Dr. Arnheim.  On remand, I recommend that the ALJ amend the discussion on those additional points, as needed.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1.  the Court DENY Defendant's Motion for Summary Judgment (ECF No. 12);

2.  the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 11);

3.  the Court REVERSE in part the Commissioner's decision under sentence four; and

4.  the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

---

[2] Dr. Arnheim suggests that the score may have been influenced by Mr. Baker's "reported depression and attitude problems," (Tr. 507), but it is unclear whether those are conditions that can be controlled by Mr. Baker or are symptoms of mental health conditions that are outside his control.  Thus, this case might be different than a case in which an IQ score is rendered invalid as a result of malingering.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  July 18, 2016                                    _____/s/_____

                                                         Stephanie A. Gallagher
                                                         United States Magistrate Judge